Good morning. I am Dallas Thacker. On behalf of the appellant, Mr. Jesus Valencia, with the court's permission, I would reserve three minutes for rebuttal. We've got two issues in this case, both found in ineffective assistance of counsel. First, whether counsel erred by failing to seek exclusion of Mr. Valencia's statement to the police on the grounds of involuntariness. And second, whether counsel erred by failing to object to the irrelevant evidence that one of his sisters was seen to have red stains on her clothing, evidence which the prosecutor then used in a most improper and inflammatory manner. I'm going to spend most of my time, time permitting, on the involuntary confession issue. The U.S. Supreme Court tells us that a statement is coerced by the police if it's induced by direct or implied promises, however slight. In this case, we certainly have promises, and they're not even slight. I mean, they were quite substantial. Three promises are made. One, if the defendant confesses, his family is going to reunify. Two, the police are going to help him. Third, if he confesses, he's going to be able to avoid court. And this is not something that just happens momentarily. The defendant is interrogated for 2 hours and 20 minutes before he makes any incriminating statements. During those 2 hours and 20 minutes, by my count, he's promised family reunification four times. He's promised help four times. And he's told he can avoid court by confessing nine times. I think by any reasonable measure, these are promises made to him, and they're certainly coercive. We know that the defendant's will is broken down by the amount of time it takes. It takes 2 hours and 20 minutes of this badgering. Well, the officers didn't promise leniency, did they? I mean, did they threaten to take particular action against him if he did not confess? Well, two things, Your Honor. The U.S. Supreme Court hasn't required a promise of leniency. You can have coercion, but by promising something else. For example, in Haynes v. Washington, the promise was if you confess, we'll let you communicate with your family. I mean, there's nothing lenient about that, but it's something that's going to overbear the will of the defendant. I'd say, secondly, they actually are promising him leniency, not directly, but impliedly. I mean, they're repeatedly telling him, well, you can avoid court proceedings if you tell us what we want to hear. That's certainly a promise of leniency that you're not going to have to go to court. Well, they told him they needed to resolve this matter and they wanted to find out what happened, and they repeatedly asked him to tell them the truth. The truth defined is something incriminating. We have to look at the context. By their definition, the truth is incriminate yourself. I guess the context, let's take that up here. He came voluntarily, correct? Correct, yes. He was free to go, correct? Yes. You're not challenging that? I am not. Okay. He's 20 years old. Correct. All right. And the session with the investigators lasted about two and a half hours, is that correct? I do not recall the length of the questioning, but it was two hours and 20 minutes before anything incriminating is said. I believe it probably was somewhere in the nature of two and a half hours, maybe a little bit longer than that. Going by what I read, it seemed like it was two and a half hours. And I guess the ultimate test here is whether his will was overborn, correct? Yes. Was there any physical coercion? Are you submitting that? No, there's no physical coercion, nor is physical coercion required. Correct, correct. So you're saying it was improperly induced or there was promises made? I want to understand the exact nature of your argument. Yes. I think the three promises I specified earlier, that his family would be reunified, he would be given help, and he would be able to avoid court, those are promises. But they didn't say, we promise you this is what will happen, is that correct? Well, under the cases, there's no magic words. I mean, you have to look at what the police are doing. And these police are very clever. And under the cases, though, this is under AEDPA, correct? That's correct, Your Honor. So we have to give some look at this through the AEDPA lens, you agree? You're required to defer to the State court judgment. And isn't the State court given a certain amount of leeway here on how to resolve this? I think it's Yarborough that gives the State courts a lot of leeway on this inquiry and looking at the totality of the circumstances and whether or not the confession here was coerced. Absolutely. But this court, if it finds that what the State court did was objectively unreasonable, that's the language used by the U.S. Supreme Court, it's required to grant a remedy. And I think if we look at the full context of this interrogation, the State court's understanding of what occurred here was objectively unreasonable. For example, with respect to the promises about the family, the State courts as well, they never said expressly that the defendant himself would be rejoining the family. But, of course, they never said the converse either. So we've got a situation. We've got a 20-year-old Mexican national who's dropped out of high school, who has no prior contact with the criminal justice system. You have two veteran detectives who are extremely skilled at what they're doing, and they know the lingo. I mean, they're not going to be stupid enough to make an express promise of leniency or to say anything expressly. I mean, they're talking in a certain code that they believe is going to get what they want, but that a reviewing court will say, well, you didn't cross the line. But I think that they did cross the line in this case. It seems like the State court, at least the way that the language that they used, determined that the officers had not coerced the petitioner because they only told them about natural consequences of confessing or not confessing. And I guess isn't it consistent with Supreme Court precedent to say discussing these consequences can't be a coercive threat or a promise? I believe that the defendant being reunified with his family is a natural consequence of confessing. Quite the contrary. The natural consequence would be we're going to send you to the State penitentiary for a long time for this very serious criminal offense. They didn't tell him that, though. I believe they did. I mean, again, they're very careful in the words they use. But our job is to look at the words. Well, they told him the family would be reunified were he to tell the truth. And, again, the truth in their lexicon was confess. A reasonable person in the defendant's shoes is going to hear that and say they're talking about me being with the family. At one point, I'd have to look in the excerpt of the record to remember exactly what was said, but they said something to the effect of do you want the family unit reunified or put together? Well, he's a member of the family unit, so. Well, I guess, but is your claim here, or I want to make sure I understand, the claim here is not that the State court applied a rule that was contrary to established law, correct? I mean, the claim is that the State court's application of the rule was objectively unreasonable. Yes. All right. You're not claiming it's contrary to law. You are only claiming it's an unreasonable application of law. That is my position, Your Honor, yes. All right. And so do the Supreme Court cases on coercion or voluntariness say that an accurate statement about the consequences of confessing or not confessing is a threat? No, but that isn't what occurred here. They told him he would avoid going to court if he confessed, right? We know that's untrue because he confessed and he went to court. So what they're telling him is plainly a promise of a benefit, if you will, that he's not going to have to go to court if he tells them what they want to hear. And the same thing with the family. No, but there's nowhere, I mean, looking at the transcript, do the officers tell Mr. Valencia that if he confesses he'll be able to go home? There's nowhere in the transcript where they say that. I think because they're very clever. Recall, there was no requirement of a direct promise. In Hutto v. Ross, the U.S. Supreme Court says the promise may be indirect. That is exactly what is going on here because these police are very sophisticated and they are very clever in what they're doing. So they know we don't make a direct promise that, you know, we won't prosecute you or we'll tell the judge, you know, what a good attitude you have. They know what they're doing. You know, they alternate back and forth, one and the other. You know, it's a routine. Well, you know, the Supreme Court has said things like lying to suspects and telling them, well, you know, your co-defendant next door has confessed and implicated you. They said that's okay. That's permissible, that's correct. Yeah. So, you know, I mean, you may not like this. A lot of people don't like it, but that's the way the law is, right? So, you know, when you keep saying the police are clever and they're very skilled at all of this, that doesn't mean anything. This case really is no different. You go back to the U.S. Supreme Court in Haynes v. Washington way back in 1963. Yeah. They basically tell the verdict. In the good old days. In the good old days, correct. Yeah. Things have changed. Things have changed. I wish I was here in 1995 before EDPA was decided. Well, because I'd be citing the opinion you wrote for the court in United States v. Tingle and I wouldn't have all these EDPA problems. But I contend I'm still entitled to win under the EDPA case, under the EDPA statute, because in Haynes they tell the suspect who's in the interview room, if you tell us what we want to hear, we'll let you call your family. Slightly different here. We're not talking about calling your family because his parents are out in the waiting room, but they're telling him basically all of this is going to go away and your family's going to be back together, which a reasonable person in this situation is going to believe. Well, the family's going to be back together, and I'm a member of the family. I'm going to be with them. Therefore, if I just tell them what they want to hear, I can go home and it's all forgotten. But, counsel, this is all against a backdrop where his ñ didn't he come with his parents? He did, yes. Yeah. And they told him he was free to leave at any time. That's one of the very first things they said. So when they're talking to him about, well, you know, your family's going to be back together, he could have just gotten up and walked right out the door. He'd be right with his family, wouldn't he? He's a 20-year-old Mexican national who didn't even graduate high school. He is so intimidated by this with the two veteran detectives. Well, he wasn't. You can't ignore that. He didn't admit to everything that they wanted ñ that you claimed they wanted him to admit, did he? I mean, if he was that intimidated, why didn't he just say, okay, I agree to everything? He didn't. Because the police were pleased. They had enough for their purposes. I mean, in this case, the government's conceded that if these statements are excluded, I won the case. They conceded it's prejudicial. They had all they needed. They were happy. Day's work is done. I see that I've only got two minutes. I'll reserve it. Thank you, Kevin. Thank you. May it please the Court, my name is Pam Critchfield, and I represent ñ I work for the State of California Attorney General's Office, and I represent the respondent. In this case, Petitioner is arguing that defense counsel was ineffective for failing to suppress ñ move to suppress the statement that he alleges is involuntary and for failing to object to the introduction of a statement made during the police interview and briefly during trial, a statement his sister, one of the sisters, one of the victims made. In Harrington v. Richter, the United States Supreme Court held that this court failed to give the state court's determination sufficient deference. Petitioner's argument here is the same thing. He is not giving the state court sufficient deference in its determination that, a, the statement was obtained voluntarily, there was no coercion, defense counsel was therefore not ineffective for failing to move to suppress, and, b, that the statements made by one of the victims were not sufficiently prejudicial enough to move for suppression. Sotomayor, why isn't this case like Lyman? Because of the ñ two things. When the state court said, and I think the district court agreed with this, that the statements made by the police officers in this case that, if you tell us the truth, your sisters can come home, is a natural consequence of the circumstances here. This ñ the sisters had been ñ the victims had been pulled by the social services the night before when they had their police interviews. They were in the shelter or in foster care. The very next morning, Petitioner decides he wants to clear things up. He goes down to the police station voluntarily with his parents to tell ñ clear things up. Let's just get this situation taken care of. The police officers telling him, if you tell us the truth, your sisters can come home, is actually a natural consequence in this case. He wasn't brought down on a murder charge. As in ñ Lyman, he ñ It wasn't just the sisters who go home. It said you will unify the family. They said that, too. They said it will unify the family. It means they'll all be there together, including him. If you ñ Unify the family. He wants to believe that. If he wants to believe that. What does unify the family mean? He wouldn't ñ he's not part of ñ That his sisters could come home and live with his parents. Is that unifying the family? Sure. Absolutely. Is he part of the family? He is, but unifying the family doesn't necessarily mean that he would be part of that. So that's unifying the family, when you have part of the family home? But ñ And part in prison is unifying the family. The policeman said, we can't send your sisters back home unless we know the truth. Didn't they also say something about unifying the family? I mean, maybe if they didn't, they didn't. I thought they said unify the family. I'm not ñ actually, Your Honor, I'm not exactly sure of their exact words. I know they did say, if you want your family ñ I believe they said if you want your family to be unified, you need to tell us the truth. If you want your sisters to come back home, if you tell us the truth, your sisters can come back home. And unify the family, as you just said. All right. Let's get on to something else. They also said they wanted to find out if it was just one time, because then it's good. If it's more than one time, he's bad, right? I think the words ñ That's all we want to know is whether it's one time, to make sure it was one time. That's all. And then they went on to say if it's more time, more than one, then it's bad. There was something in that context, I think, about his urges as a young man, or they can understand his urges or something. And I think he was saying that he had touched them accidentally. And, yes, he knew he had touched them. And then the next step was they asked about ñ or they said, well, did you do anything else? And I forget where it is. He said if it's just one time, then that's it. It never happened again. That's fine. We want to know about that one time. And then later on he said if it's one time, that's cool, that's good. If it's more than one time, a bunch of times, that's bad. And then they said that if it's just one time, they're not going to tell his mother. They're not going to tell his mother because they're going to send him to jail and she'll never find out. Thank you. MS. GOTTLIEB Well, I think the best point is that the California Supreme Court accepted all of that.  GOTTLIEB Yes. MS. GOTTLIEB I think it's fortunate that you're not on the mobile case. MS. GOTTLIEB On direct review. MS. GOTTLIEB Yes. And if there are no other questions, I would submit it on the briefs. GOTTLIEB That's a good idea. MS. GOTTLIEB Thank you. MR. GOTTLIEB Back to exactly what the defendant is told. The Court will find this in Excerpt of Record 206. And I'll quote, The truth is the only thing that's going to fix all this and keep your family together as a unit. That's the only thing that's going to keep your family together. Unit. They're clearly telling him he's going to be with the family if he tells them what they want to hear. I think that type of comment to a suspect is clearly proscribed by the U.S. Supreme Court. Well, the language I was referring to, counsel, is as follows. And this is, I guess, ER 17172. If it happened here, I want to talk to you about it to find out why so you don't do that again. Okay, because she is your sister and you shouldn't touch her or try to look at her breasts or do anything like that. Is it you are a bad person because that happened? No. You're a guy. You have needs. You have wants. Sometimes when you're wrestling, playing with your sister, maybe it just happens because, you know, maybe you're not thinking or maybe it just kind of, like a joke, okay, touch and that was it. Does it make you a bad person? This is the bad person stuff. No, but we need to talk to you about that because you can't do it anymore. You've got to stop. That was the quote. And recall, right before this, they tell them they're not trying to get him in trouble. So, again, I mean, these officers are so sophisticated in their use of language, and they know who their audience is. And their audience is a 20-year-old with no experience with the criminal justice system, doesn't even have a high school degree. And, clearly, he's hearing. If he confesses the way they want him to, everything's going to be fine. I assume my time is up unless there are any questions. Thank you. Well, thank you, counsel. The case is submitted. The court stands in recess for today. All rise.
judges: Ezra, Reinhardt, Murguia